802 F.2d 1131
 46 Fair Empl.Prac.Cas. 1651,
41 Empl. Prac. Dec. P 36,566,
3 Indiv.Empl.Rts.Cas. 657
Deborah Lynn THORNE, Plaintiff-Appellant/Cross-Appellee,
v.
CITY OF EL SEGUNDO, et al., Defendants-Appellees/Cross-Appellant.
 Nos. 84-6000, 84-6323.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 4, 1985.
Decided Oct. 20, 1986.
 
 Nathan Goldberg, Allred, Maroko, Goldberg & Ribakoff, Los Angeles, Cal., for plaintiff-appellant/cross-appellee.
 Richard R. Terzian, Burke, Williams & Sorensen, Los Angeles, Cal., for defendants-appellees/cross-appellant.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, TANG and FLETCHER, Circuit Judges.
 FLETCHER, Circuit Judge:
 
 
 1
 Thorne appeals, claiming the district court's judgment awarding her $812.00 in backpay in her Title VII employment discrimination action against the City of El Segundo is inadequate. She also appeals the district court's dismissal of her 42 U.S.C. Sec. 1983 claim against the individual defendants on grounds of qualified good faith immunity. The City of El Segundo cross-appeals the award of attorneys' fees to Thorne in the amount of $34,900. We vacate and remand the district court's judgment on the backpay award for recomputation, remand the issue of front pay for further findings, and affirm the dismissal of the section 1983 claim. We vacate and remand the award of attorneys' fees for reconsideration.
 
 
 2
 * FACTS
 
 
 3
 In 1983, this court reversed the district court's dismissal of Deborah Thorne's section 1983 claim against John Hampton, Police Chief Johnson, and Captain Devilbiss (the "individual defendants"). We also reversed the district court's judgment denying Thorne's Title VII claim against the City of El Segundo.
 
 
 4
 Thorne worked for the City of El Segundo Police Department as a clerk-typist until she resigned in November 1978. Thorne's claims arose out of the City's discriminatory handling of her application in January 1978 for a position as an officer on the City's police force, and its administration of polygraph testing as part of the application process. Notwithstanding her ranking as second-highest among applicants on the oral and written tests, and her satisfactory completion of physical agility tests, the department disqualified Thorne from consideration.
 
 
 5
 In Thorne v. City of El Segundo, 726 F.2d 459 (9th Cir.1983), cert. denied, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1984), we concluded that the City's proffered explanations for refusing to hire Thorne as a police officer were pretextual, and that its actions constituted illegal discrimination on the basis of sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, et seq. We further held that by requiring Thorne to answer irrelevant, highly personal questions during the polygraph examination about her past sexual activities, the individual defendants violated Thorne's constitutional privacy and associational interests. We remanded the case to the district court for the limited purpose of entering judgment for Thorne on her Title VII claim, determining damages on that claim, and taking evidence on whether the defendants were entitled to qualified good faith immunity on the section 1983 cause of action. The case once again is before us to review the district court's decisions on those issues and its award of attorneys' fees.
 
 II
 DISCUSSION
 A. Title VII Relief
 
 6
 The primary objectives of Title VII are to eliminate all vestiges of discrimination in the workplace, and to make persons whole who have suffered unlawful discrimination. Albemarle Paper Company v. Moody, 422 U.S. 405, 417, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975); Accord Franks v. Bowman Transportation Company, 424 U.S. 747, 763, 96 S.Ct. 1251, 1263, 47 L.Ed.2d 444 (1976).
 
 
 7
 Although the district court has wide discretion in fashioning appropriate Title VII remedies, that discretion must be exercised in light of the objectives of Title VII, Ford Motor Co. v. EEOC, 458 U.S. 219, 226, 102 S.Ct. 3057, 3062, 73 L.Ed.2d 721 (1982), and Congress's clear intent that district courts fashion the most complete relief possible. Albemarle, 422 U.S. at 421, 95 S.Ct. at 2373. Thus, once a court finds unlawful discrimination, backpay should be denied only if denial "would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." Id.; Alaniz v. California Processors, Inc., 785 F.2d 1412, 1416 (9th Cir.1986).
 
 
 8
 In Thorne's case, the district court awarded backpay for a limited period from July 1978, when, absent discrimination, Thorne would have assumed the duties of police trainee, through November 1978, when she voluntarily resigned from her clerk-typist position with the department. The award totalled $812.00, representing the pay differential between the clerk-typist and police officer trainee positions during the award period. The district court concluded that Thorne's backpay award could not extend beyond the November 8, 1978 resignation date, because the court found that Thorne voluntarily resigned from her position. The court applied precedents that prohibit an employee, who has been denied discriminatorily an opportunity for promotion, from collecting backpay for periods beyond that employee's voluntary resignation, unless the employee demonstrates that she was constructively discharged by the employer. See Satterwhite v. Smith, 744 F.2d 1380, 1381 n. 1 (9th Cir.1984); Heagney v. University of Washington, 642 F.2d 1157, 1166 (9th Cir.1981); Muller v. United States Steel Corp., 509 F.2d 923, 930 (10th Cir.), cert. denied, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). The court was wrong in doing so.
 
 
 9
 The discriminatory refusal to offer Thorne a position as a member of the police force constituted a refusal to hire, and therefore the doctrine of constructive discharge is inapplicable.[1] Thus, to the extent that the district court concluded that Thorne was rejected for a promotion[2] this finding was clearly erroneous. See Alaniz, 785 F.2d at 1416. (Findings of fact are reviewed under the clearly erroneous standard.) The facts are simply otherwise.
 
 
 10
 Thorne was preparing to enter an entirely different career, in competition with other applicants outside the police department who also wished to become police officers. See Thorne, 726 F.2d at 462. The mere fortuity that Thorne had a preexisting employment relationship with the employer who was then hiring police officers does not bring her case within the scope of promotion or demotion cases that apply the doctrine of constructive discharge.
 
 
 11
 There is a valid policy reason for limiting backpay awards in promotion cases. The purposes of Title VII are best served when parties, where possible, attack discrimination within the context of their existing employment relationships. See Nolan v. Cleland, 686 F.2d 806, 813 (9th Cir.1982); Heagney, 642 F.2d at 1166; Derr v. Gulf Oil Corporation, 796 F.2d 340, 342 (10th Cir.1986); Clark v. Marsh, 665 F.2d 1168, 1173 (D.C.Cir.1981); Bourque v. Powell Electrical Manufacturing Co., 617 F.2d 61, 65-66 (5th Cir.1980).
 
 
 12
 An employee, faced with an obstacle in the logical progression and development of a career should not quit at the first sign of institutional discrimination. Restricting backpay awards encourages the employee to work with supervisors within the existing job setting and employment relationship in an effort to overcome resistance within that workplace and to eradicate the discrimination.
 
 
 13
 But where, as here, an employee has no such opportunity, then these incentives have no relevance and backpay restrictions are inapplicable.
 
 
 14
 Had Thorne remained a clerk-typist for the police department, she would not have been in any better position to attack discrimination in police officer hiring than any other applicant who worked for another city agency or for an employer in the private sector. She had no "existing employment relationship" within the paramilitary structure of the police force. Under such circumstances, we conclude that Title VII does not require that we treat Thorne less fairly than we would another applicant.
 
 
 15
 This court has recognized the distinction between the promotion context and the situation in which a materially different position was sought. We identified the relevant inquiry to be whether the plaintiff had mitigated her damages by actively seeking employment following her resignation from the job with the discriminatory employer. In Sangster v. United Air Lines, 438 F.Supp. 1221 (N.D.Cal.1977), aff'd, 633 F.2d 864 (9th Cir.1980), cert. denied, 451 U.S. 971, 101 S.Ct. 2048, 68 L.Ed.2d 350 (1981), United Air Lines refused to permit a married stewardess supervisor to resume her former position as stewardess. The plaintiff quit her position with United and sued, charging sex discrimination. In determining the appropriate remedy, the district court considered what significance should attach to Sangster's voluntary quitting of her stewardess supervisor position. The court stated,
 
 
 16
 [I]t is necessary to distinguish between United's refusal to give Mrs. Sangster the job she wanted and sought, that of stewardess, and the job she did not want and quit, that of stewardess supervisor. It seems obvious that United cannot insulate itself from nor set up a defense to a claim of unlawful refusal to hire as to one job, by offering an applicant therefor a second job which she does not want and which differs in material aspects [citations omitted]. Such an offer may have relevance to issues of damages or mitigation, but it will not overcome the unlawfulness of its refusal to hire.
 
 
 17
 * * *
 
 
 18
 * * *
 
 
 19
 The stewardess position differed materially from the supervisory position she occupied. Thus, she was not obligated to accept or retain that position in lieu of the position she was unlawfully denied.... As at no time did she cease to seek employment by United as a stewardess, her quitting the supervisory position did not constitute abandonment of her efforts to obtain her lawful due.
 
 
 20
 * * *
 
 
 21
 * * *
 
 
 22
 If relief is to be limited in any significant measure in all instances where an employee quits one job after unlawfully being denied another job by the same employer, then the employee would be constrained either to contribute by his labor to an employer who has treated him unfairly and who persists in that unfair treatment, or to take less than a whole remedy for injuries suffered. Again, to reduce a remedy unless the employee consents to serve his employer during the nine years it may take as here, to obtain that remedy, would force impossibly onerous choices on the employee and, because the employee's readiness to bring charges would be inhibited, the Act's purpose of ending economic discrimination would be frustrated.
 
 
 23
 Id. at 1228-30 (emphasis added).
 
 
 24
 Although in Sangster's case the court chose not to award backpay, its reason was that Sangster made no effort to secure work during eight years unemployment following her voluntary resignation, and therefore did not mitigate her damages.[3] We stated that "Sangster was not entitled to remain idle for eight years after quitting substantially equivalent employment even if her right to seek employment with a different employer is given full recognition. We conclude that Sangster did not meet her duty to mitigate her damages...." Sangster, Id. at 868. (emphasis added).
 
 
 25
 Other circuits are in agreement. In Whatley v. Skaggs Co., 707 F.2d 1129, 1133 & n. 3, 1137-38 (10th Cir.), cert. denied, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 314 (1983), the employer discriminatorily removed the plaintiff from a managerial position. However, the employer permitted him to transfer to its warehouse. The court characterized the employer's actions as a termination and subsequent rehiring, rather than as a demotion. The court noted that although this characterization was irrelevant for purposes of Title VII liability, it was critical for determining the appropriate backpay award. The court held that in the circumstances of the case, " 'Whatley's tenure in the Skaggs warehouse has the same legal effect as if he had permanently left Skaggs's employ ... and had found employment elsewhere, later the same day.' " Id. at 1138 (quoting the district court's conclusion).
 
 
 26
 Thus, in Thorne's case, like Sangster's and Whatley's the relevant inquiry is mitigation of damages, and not constructive discharge.[4]
 
 
 27
 Absent compelling circumstances, when an employer has refused to hire an employee in violation of that employee's rights under Title VII, the court should compute the backpay award from the date of the discriminatory act until the date of final judgment. EEOC v. Monarch Machine Tool Co., 737 F.2d 1444, 1451-53 (6th Cir.1980). See also Sias v. City Demonstration Agency, 588 F.2d 692, 696 (9th Cir.1978) (when the district court could have awarded backpay up to the date of judgment, a period of four and one-half years, and instead awarded backpay for two and one-half years, the issue was whether this constituted an abuse of discretion; no abuse found because the plaintiff did not mitigate damages); Nord v. United States Steel Corp., 758 F.2d 1462, 1473 (11th Cir.1985) (district court erred when it ended the backpay period four months prior to the date of judgment); Patterson v. American Tobacco Company, 535 F.2d 257, 269 (4th Cir.) (backpay extends until the date of judgment), cert. denied, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 286 (1976); B. Schlei & P. Grossman, Employment Discrimination Law at 1432 (2d ed. 1983) ("[T]ermination of the backpay period normally occurs when the discriminatee is unconditionally and in a bona fide fashion offered the employment, reinstatement or promotion at issue. This can occur pursuant to a final court decree or pursuant to a voluntary bona fide offer of employment, reinstatement or promotion....") (footnotes omitted) [hereinafter cited as "Schlei & Grossman"].
 
 
 28
 Our court has recognized, however, that the backpay period may terminate earlier if the plaintiff has voluntarily removed herself from the job market, Sangster, 633 F.2d at 868; Schlei & Grossman, Supp. 1985 at 280-82, or rejected the employer's unqualified offer of reinstatement to the position to which the plaintiff applied, Ford Motor Co. v. E.E.O.C., 458 U.S. 219, 241, 102 S.Ct. 3057, 3070, 73 L.Ed.2d 721 (1982).
 
 
 29
 The record shows that after a period of unemployment and temporary work, Thorne was hired by Rockwell International in 1979. She continued working there until approximately September 1982, when she left on maternity leave. Thorne testified that she intended to remain out of the work force until January 1986, at which time she planned to return to Rockwell.
 
 
 30
 Thorne presented evidence and testimony regarding her earnings as a clerk-typist for the City, and her earnings after her resignation in 1978. In addition, Thorne furnished evidence at trial regarding the earnings of the officer that the City hired after discriminatorily refusing to consider her application. According to this evidence, the difference between the police officer compensation and the amount Thorne actually earned up until 1982 totaled $30,669 ($85,649 minus $54,980).
 
 
 31
 We remand to the district court for a determination of Thorne's backpay award, based on the figures she provided, if the court finds them to be accurate, or as modified if necessary. The backpay award should include Thorne's monetary damages up to the time she voluntarily stopped work in 1982. Alternatively, if Thorne returned to work in January, 1986, and if the court further determines that Thorne's rejection of an offer of reinstatement was due to excessive hostility between the parties, see infra, the award should terminate as of the date of the district court's final judgment.
 
 
 32
 Thorne also requested front pay in the amount of $346,800, representing the amount she would have earned as a police officer over her estimated career, with deductions for reasonable mitigating amounts.[5]
 
 
 33
 Awards of front pay are appropriate when it is impossible to reinstate the plaintiff or when it would be inappropriate due to excessive hostility or antagonism between the parties. See Fadhl v. City and County of San Francisco, 741 F.2d 1163, 1167 (9th Cir.1984); see also EEOC v. Pacific Press Publishing Association, 482 F.Supp. 1291, 1320 (N.D.Cal.1979) (when effective employment relationship cannot be reestablished, front pay is appropriate), aff'd 676 F.2d 1272 (9th Cir.1982).
 
 
 34
 During retrial, Thorne testified that if the City offered to reinstate her to a police officer position, she would not accept such an offer. Later in the hearing, defendant Devilbiss, now Police Chief, testified that, on behalf of the City, he was prepared to offer Thorne reinstatement. The district court found that Thorne had not sought and does not desire reinstatement.[6]
 
 
 35
 Thorne's failure to seek reinstatement would not preclude front pay if excessive hostility exists. Although the defendants testified that they harbored no ill feelings, the court did not make specific findings regarding the existence or absence of hostility between the parties. The court's finding that the conditions of Thorne's employment were not intolerable after she was denied a position as an officer does not aid us in our determination. Assuming that the defendants bore no hostility toward Thorne as long as she remained a clerk-typist, it does not follow that they would welcome Thorne into their midst as an officer. Moreover, the district court's finding does not take into account possible animosity generated during the protracted litigation.
 
 
 36
 We therefore remand this issue to the district court to make findings on whether excessive hostility exists. If there is no such hostility, Thorne is not entitled to front pay.B. Qualified Immunity
 
 
 37
 Government officials performing discretionary functions are shielded from liability for civil damages if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Ward v. County of San Diego, 791 F.2d 1329, 1332 (9th Cir.1986). The Harlow standard is one of "objective reasonableness," Davis v. Scherer, 468 U.S. 183, 191, 104 S.Ct. 3012, 3018, 82 L.Ed.2d 139 (1984), and the critical inquiry is whether "the constitutional right [that the defendant] was alleged to have violated was 'clearly established' at the time of the violation." Id. at 194, 104 S.Ct. at 3019 (quoting Butz v. Economou, 438 U.S. 478, 498, 98 S.Ct. 2894, 2906, 57 L.Ed.2d 895 (1978) ).
 
 
 38
 In Thorne, 726 F.2d at 470-71, we held that the defendants Johnson, Devilbiss, and Hampton violated Thorne's constitutional rights of privacy and free association by conducting a broad and unregulated inquiry into her off-duty sexual activities and in relying upon information concerning such activities when reviewing her employment application.[7]
 
 
 39
 The question we must address is whether the parameters of this constitutional right were clearly established in 1978 when Thorne sought employment, and if so, whether the defendants' conduct was objectively reasonable. If there is no binding precedent, this court looks to the decisions of other circuits, state courts, and district courts to aid in determining whether a constitutional right was clearly established. Ward, 791 F.2d at 1332; Capoeman v. Reed, 754 F.2d 1512, 1514 (9th Cir.1985). The determination whether the defendants are entitled to immunity is a matter of law. Id. at 1513.
 
 
 40
 At the time of Thorne's application, it was clearly established that the Constitution guaranteed the right to make certain fundamental intimate choices without state interference, see Loving v. Virginia, 388 U.S. 1, 12, 87 S.Ct. 1817, 1823, 18 L.Ed.2d 1010 (1967) (freedom to marry or not marry); Skinner v. Oklahoma, 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942) (sterilization of habitual criminals violates equal protection and deprives an individual of a basic liberty, procreation); Griswold v. Connecticut, 381 U.S. 479, 484-86, 85 S.Ct. 1678, 1681-82, 14 L.Ed.2d 510 (1965) (Constitution guarantees right of privacy and protects rights of married couples to use contraception); Eisenstadt v. Baird, 405 U.S. 438, 453-55, 92 S.Ct. 1029, 1038-39, 31 L.Ed.2d 349 (1972) (extending right of privacy to protect use of contraceptives by unmarried persons); Roe v. Wade, 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1973) (right of privacy protects a woman's decision regarding termination of pregnancy), and to avoid disclosure of personal matters, see Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977).
 
 
 41
 While it was clear at that time that the state could not intrude into these specifically delineated areas that touched upon sexual privacy, the Supreme Court had not expressly nor fully considered whether and to what extent state regulation of private consensual sexual behavior might be permissible. Carey v. Population Services International, 431 U.S. 678, 694 n. 17, 97 S.Ct. 2010, 2021 n. 17, 52 L.Ed.2d 675 (1977).
 
 
 42
 In 1978, Thorne addressed an issue that this court had not confronted previously: the striking of an appropriate balance between an individual's right of privacy and free association and an employer's interest in the off-duty private activities of its employees or prospective employees. Courts that had confronted related but factually distinguishable situations during this period had reached mixed results. Compare Wilson v. Swing, 463 F.Supp. 555, 563-64 (M.D.N.C.1978) (neither First Amendment right of association nor analogous right of privacy protected police officer who had extramarital affair with another officer; moreover government has substantial interest in discouraging adulterous conduct, since it could lead to potential disciplinary and morale problems) and Hollenbaugh v. Carnegie Free Library, 436 F.Supp. 1328 (W.D.Pa.1977) (although right of privacy has been extended to areas traditionally categorized as "immoral," this right does not protect the right of a married person to live with an unmarried person), aff'd, 578 F.2d 1374 (3d Cir.), cert. denied, 439 U.S. 1052 (1978) (Marshall, J., dissenting) with Society For Individual Rights, Inc. v. Hampton, 63 F.R.D. 399, 400-01 (N.D.Cal.1973) (civil servant may be discharged for immoral behavior only if the behavior "impairs the efficiency" of the service; employer could not discharge plaintiff merely because he was a homosexual)" aff'd, 528 F.2d 905 (9th Cir.1975); Mindel v. United States Civil Service Commission, 312 F.Supp. 485, 488 (N.D.Cal.1970) (post office violated employee's right to privacy by terminating him for living with an unmarried woman; post office had shown no reason why plaintiff should have to live according to "its special moral code"); Major v. Hampton, 413 F.Supp. 66, 68-71 (E.D.La.1976) (IRS agent who kept "fun place" or "shack pad" for off-duty "trysts" in French Quarter of New Orleans, "the city that care forgot," could not be dismissed for his conduct); Drake v. Covington County Board of Education, 371 F.Supp. 974, 979 (M.D.Ala.1974) (employer could not dismiss unmarried, pregnant teacher for immorality; her conduct did not affect her competency or fitness as a teacher); Pettit v. State Board of Education, 10 Cal.3d 29, 35, 513 P.2d 889, 893, 109 Cal.Rptr. 665, 669 (1973) (revocation of teacher's credential upheld for participating in sexual acts at "Swinger's Party"; court distinguishes this case from those cases in which the conduct at issue occurs totally in private).
 
 
 43
 We also note that post-1978 decisions, while not relevant to our determination of what law was clearly established at the time of Thorne's application, also illustrate the continued disagreement about the nature and scope of constitutional protection. Compare Shawgo v. Spradlin, 701 F.2d 470, 480-83 (5th Cir.) (dismissal of officers for off-duty dating and cohabitation did not violate privacy rights; police departments may regulate such off-duty activities of officers), cert. denied, 464 U.S. 965, 104 S.Ct. 404, 78 L.Ed.2d 345 (1983); with Thorne, 726 F.2d at 470-71; Hoffman v. McNamara, 630 F.Supp. 1257, 1262 (D.Conn.1986) (discussing the difference between sexual activity occurring away from police academy and conduct occurring on the premises; right of privacy arguably protects the former while it does not protect the latter); Briggs v. North Muskegon Police Department, 563 F.Supp. 585, 590 (W.D.Mich.1983) (upholding right of sexual privacy for police officers), aff'd, 746 F.2d 1475 (6th Cir.1984), cert. denied, --- U.S. ----, 105 S.Ct. 3535, 87 L.Ed.2d 659 (1985); and Shuman v. City of Philadelphia, 470 F.Supp. 449 (E.D.Pa.1979) (police officers' private sexual activities are within constitutionally protected zone of privacy; unregulated inquiries violate rights).
 
 
 44
 Thorne established in this circuit that the Constitution prohibits unregulated, unrestrained employer inquiries into personal, sexual matters that have no bearing on job performance. However, at the time the events in this case transpired, we conclude that the cases had not delineated the parameters of this right to privacy with sufficient clarity to regard the right as "clearly established," and thus defeat the defendants' good faith immunity.[8] See Shuman, 470 F.Supp. at 462 (stating in 1979 that "the nature of the constitutional right being protected, the privacy right, is in the midst of evolution. Defendants here cannot be 'charged with predicting the future course of constitutional law.' "); Note, Fornication, Cohabitation, and the Constitution 77 Mich.L.Rev. 252, 256 (1978) (analyzing whether a right to sexual privacy exists and observing in 1978, that "no lawyer asked by clients about the constitutionality of a state fornication or cohabitation statute can counsel with confidence").
 
 C. Attorneys' Fees
 
 45
 The district court ordered the City of El Segundo to pay Thorne $34,900.75 in attorneys' fees, the total amount Thorne requested. This sum represented Thorne's cost estimate of litigating both the Title VII and section 1983 claims. The district court's order provided no explanation or justification of the award, but merely indicated that "[i]t is hereby ordered that defendant City of El Segundo pay forthwith to plaintiff the sum of $34,900.75 in reasonable attorneys' fees."
 
 
 46
 The City cross-appeals, challenging the fee award, relying primarily on three arguments: (1) that the fee award is disproportionately high, compared to Thorne's $812.00 damage award; (2) that the district court should not have compensated Thorne for the total hours spent in litigation since she did not prevail on her section 1983 claim; (3) that Thorne did not provide adequate billing records to support the award.
 
 
 47
 Section 706 of Title VII, 42 U.S.C. Sec. 2000e-5(k) permits the "prevailing party" to recover reasonable attorneys' fees. The plaintiff is considered the prevailing party for attorneys' fees purposes if he or she succeeds "on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir.1978)); Sethy v. Alameda County Water District, 602 F.2d 894, 897-98 (9th Cir.1979) (per curiam). In this case, Thorne clearly succeeded in her Title VII claim against the City, and thus was the prevailing party for purposes of awarding attorneys' fees.[9]
 
 
 48
 In determining the reasonableness of a fee award, we look to the Supreme Court's decisions in Hensley, and more recently in City of Riverside v. Rivera, --- U.S. ----, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986).[10] We review the district court's decision on the attorneys' fee award for an abuse of discretion, Hensley, 461 U.S. at 437, 103 S.Ct. at 1941; Probe v. Teachers Retirement System, 780 F.2d 776, 784 (9th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 2891, 90 L.Ed.2d 978 (1986).
 
 
 49
 In Hensley, the Supreme Court used the formula of hours reasonably expended on the litigation multiplied by a reasonable hourly rate as the starting point for calculating a reasonable fee award. Hensley also set forth the adjustments to this figure that a district court must consider in cases in which a plaintiff attains only partial success.
 
 
 50
 In such cases, the district court must apply a two-part analysis. First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. Hensley, 461 U.S. at 434-35, 103 S.Ct. at 1939-40. If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. at 435, 103 S.Ct. at 1940. If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. Such decisions are within the district court's discretion. Id. at 435-37, 103 S.Ct. at 1940-41.
 
 
 51
 The test for relatedness of claims is not precise. Id. at 437 n. 12, 103 S.Ct. at 1941 n. 12. However, related claims will involve "a common core of facts" or will be based on related legal theories, id. at 435, 103 S.Ct. at 1940, while unrelated claims will be "distinctly different," and based on different facts and legal theories, id. at 434, 103 S.Ct. at 1939. In a post-Hensley decision, the Seventh Circuit focused on whether the claims "seek relief for essentially the same course of conduct." Thus, the test is whether relief sought on the unsuccessful claim "is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1279 (7th Cir.1983) (course of conduct giving rise to unsuccessful false arrest and excessive force claims was distinct and separate from course of conduct giving rise to injury from subsequent strip search, the constitutional claim upon which plaintiff was successful); Spell v. McDaniel, 616 F.Supp. 1069, 1083 (E.D.N.C.1985) (successful claims against police officer for assault and unsuccessful claim against a supervisory defendant for permitting and encouraging police abuse were related).
 
 
 52
 Other courts evaluating relatedness have considered whether the unsuccessful claims were presented separately, whether testimony on the successful and unsuccessful claims overlapped, and whether the evidence concerning one issue was material and relevant to the other issues. See Vaughns v. Board of Education of Prince George's County, 598 F.Supp. 1262, 1272-74 (D.Md.1984), aff'd, 770 F.2d 1244 (4th Cir.1985); Cinevision Corp. v. City of Burbank, 745 F.2d 560, 581 (9th Cir.1984) (reduction of fees not required because claims of successful plaintiff were essentially identical to claims of unsuccessful party represented by the same attorneys; they concerned the same dispute and would have required the same amount of trial preparation regardless whether other plaintiff remained a party), cert. denied, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985).
 
 
 53
 In Thorne's case, the City argues that the identity of the defendants, the necessary proofs and the types of available relief in the section 1983 and Title VII claims are entirely different, thus making the two claims unrelated. Thorne argued to the district court that the evidence relating to the Title VII and section 1983 claims was "inextricably intertwined." Thorne further argued that the results obtained were highly significant.
 
 
 54
 The district court awarded Thorne the full amount of fees requested, but did not state explicitly its reasons. The district court reasonably may have concluded, pursuant to Hensley, that the Title VII claim and the section 1983 claim arose in part out of a "common core of facts," and that evidence that was material to one claim was material to the other. It was critical to Thorne's Title VII claim that the defendants rejected her partly because of information obtained during polygraph testing about her sexual history. The defendants used this unconstitutionally obtained information to judge Thorne against a different moral standard than male officers. Thorne, 726 F.2d at 466-67. Similarly, it was out of this same course of conduct that Thorne's section 1983 claim arose. By forcing Thorne to disclose this personal information and using it to evaluate her fitness as a police candidate, the defendants violated Thorne's constitutional rights. Id. at 468-71. The testimony presented overlapped, and it seems unlikely that trial preparation time on the two claims could be separated. We note that in Hensley, the court observed that in civil rights suits, cases involving unrelated claims may be unlikely to arise with great frequency. Hensley, 461 U.S. at 435, 103 S.Ct. at 1940.
 
 
 55
 The district court's order, however, does not reflect its analysis of this issue. Nor did the court evaluate the significance of relief in relation to the hours spent, or consider the mandatory Kerr guidelines when assessing the reasonableness of the attorneys' fee request. The Supreme Court and this court have stated that it must do so:
 
 
 56
 We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.
 
 
 57
 Id. at 437, 103 S.Ct. at 1941; Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210-12 (9th Cir.1986); Sealy, Inc. v. Easy Living, Inc., 743 F.2d 1378, 1385 (9th Cir.1984) (remanding to the district court because that court's finding that the plaintiff's request was "reasonable" was conclusory and unsupported by analysis); Probe, 780 F.2d at 785 (9th Cir.1986) (admonishing the district court for failure to apply explicitly the Kerr factors).[11]
 
 
 58
 If on remand, the district court confirms that Thorne's claims are related,[12] it must then complete the Hensley analysis by discussing whether Thorne's significant accomplishments in this case justify the fee amount requested. See Hensley, 461 U.S. at 434-37, 103 S.Ct. at 1939-41; Rivera, 106 S.Ct. at 2691-92.
 
 
 59
 We need not dwell at this time on the City's remaining contention--that Thorne's $34,900 attorneys' fee award is excessive in view of the $812.00 damages recovered.[13] Rivera tells us that there is no absolute requirement that attorneys' fees in civil rights cases be proportionate to the damages awarded. 106 S.Ct. at 2697-98. Although the damage amount may be relevant, id. at 2694, the correct standard is one of compensation for time reasonably expended, id. at 2695.
 
 
 60
 The district court's judgment is AFFIRMED in part, and REVERSED and REMANDED in part. Thorne is entitled to attorneys' fees on appeal.
 
 
 
 [1]
 A person is constructively discharged if "a reasonable person in his position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." Satterwhite v. Smith, 744 F.2d at 1381
 
 
 [2]
 We note that the district court's findings alternately referred to Thorne's "rejection for promotion," and to the defendant's denial of "employment or promotion with the City." See e.g., Findings of Fact Nos. 19-21
 
 
 [3]
 In affirming the district court, this court identified those acts by an employee that would constitute a "willful loss of earnings," thus resulting in a denial of backpay: (1) failure to remain in the labor market; (2) refusal to accept substantially equivalent employment; (3) failure to search diligently for alternative work; (4) voluntarily quitting alternative work without a good reason. Sangster, 633 F.2d at 868
 
 
 [4]
 Because the termination date for backpay awards in Title VII cases is peculiarly dependent upon each case's unique facts, see B. Schlei & P. Grossman, Employment Discrimination Law, at 280 (2d ed. Supp.1985), we note that even in cases involving an employer's refusal to promote, courts do not apply the backpay limitation rotely. See Wells v. North Carolina Board of Alcoholic Control, 714 F.2d 340, 342 (4th Cir.1983) (issue of constructive discharge irrelevant when employee's resignation is causally related to employer's wrongful refusal to promote; moreover, termination of employment bears only upon employee's duty to mitigate), cert. denied, 464 U.S. 1044, 104 S.Ct. 712, 79 L.Ed.2d 176 (1984); Helbling v. Unclaimed Salvage and Freight Co., 489 F.Supp. 956, 963 (E.D.Pa.1980) (court refused to terminate backpay award on the date plaintiff quit defendant's employ; plaintiff quit because of her disagreements with the man hired for the position to which the defendant wrongfully refused to promote plaintiff); Taylor v. Ford Motor Co., 392 F.Supp. 254, 255-56 (W.D.Mo.1974) (assembly line employee who was denied a promotion to Tabulation Operator position legally was not required to remain in his assembly line position; court determined relief by mitigating damage award in amounts plaintiff earned subsequent to quitting Ford); Di Salvo v. Chamber of Commerce, 568 F.2d 593, 597 (8th Cir.1978) (employer who had discriminated against plaintiff in salary payments was liable for backpay until plaintiff found a job paying in excess of what defendant employer should have paid; court ignored fact that plaintiff voluntarily terminated her employment, and analyzed award in terms of whether she made effort to mitigate her damages)
 
 
 [5]
 Or in the alternative, $166,000, based on a more conservative work/life expectancy
 
 
 [6]
 We note that at the close of proceedings, Thorne's attorney did request the district court to include reinstatement as part of its order. However, we conclude that in light of Thorne's clear position throughout the litigation that she does not wish reinstatement, the district court's finding was not clearly erroneous
 
 
 [7]
 In her reply brief, Thorne contends for the first time that Hampton, Devilbiss and Johnson were performing ministerial functions in handling Thorne's application for employment. She argues that because immunity protects only discretionary conduct, the defendants here cannot be shielded from liability. See Harlow, 457 U.S. at 816-18, 102 S.Ct. at 2737-38. Apparently, Thorne's position is that the City Manager, who had ultimate hiring approval, is the only person with discretionary authority over the process. Thorne misconceives the notion of ministerial duty, however. See Davis v. Scherer, 468 U.S. 183, 196-97 n. 14, 104 S.Ct. 3012, 3020 n. 14, 82 L.Ed.2d 139 (1984) (a law that does not specify the precise action that an official must take in each instance creates only discretionary authority; where it was left to defendants to determine what constituted a "complete [personnel] investigation" and a "thorough study of all information" during employment discharge proceedings, defendants exercised considerable discretion)
 
 
 [8]
 We held in Thorne, 726 F.2d at 471 n. 11 that Hampton, who argued that he was an independent contractor, acted on the City's behalf and therefore acted under color of law. The parties have not raised the separate issue whether, if Hampton was an independent contractor rather than a government official, he was entitled to good faith immunity. Compare Lugar v. Edmundson Oil, 457 U.S. 922, 942 n. 23, 102 S.Ct. 2744, 2756 n. 23, 73 L.Ed.2d 482 (1982) (not reaching the issue) and Howerton v. Gabica, 708 F.2d 380, 385 n. 10 (9th Cir.1983) (no good faith immunity under section 1983 for private parties who act under color of law to deprive an individual of constitutional rights) with Buller v. Buechler, 706 F.2d 844, 850-52 (8th Cir.1983) (private individuals held to be state actors could claim the same qualified immunity defense that was available to the state officials with whom they dealt). Because the parties failed to raise this issue, and because Hampton's status would involve factual determinations, we do not address it here. International Union of Bricklayers & Allied Craftsmen Local Union No. 20 AFL-CIO v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985)
 
 
 [9]
 Thorne argues that she "prevailed" on her section 1983 claim as well, because this court held that the defendants violated her constitutional rights of privacy and free association. However, we are unpersuaded by this argument. The district court held, and we have affirmed, that the individual defendants are shielded from personal liability under section 1983 as a result of their qualified good faith immunity. Thus, on the section 1983 claim, Thorne was not the prevailing party. See Kentucky v. Graham, --- U.S. ----, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (if a defendant is not liable either on the merits or because of legal immunity, that defendant has not been "prevailed against"); Carbalan v. Vaughn, 760 F.2d 662, 665-66 (5th Cir.) (although jury found that municipal judge's refusal to accept motor club cards in lieu of bail was a constitutional deprivation, plaintiff did not "prevail" under section 1988; because City was not responsible and judge was immune from damages, the plaintiff won no relief), cert. denied, --- U.S. ----, 106 S.Ct. 529, 88 L.Ed.2d 461 (1985)
 
 
 [10]
 Although Hensley awarded attorneys' fees under 42 U.S.C. Sec. 1988, the court held that the standards set forth in its opinion were generally applicable "in all cases in which Congress has authorized an award of fees to a 'prevailing party.' " 461 U.S. at 433 n. 7; Probe, 780 F.2d at 785 n. 7
 
 
 [11]
 We recognize that to some extent, the Kerr analysis will overlap that required by Hensley
 
 
 [12]
 If the district court were to determine that the claims are unrelated, then Hensley prohibits an award of fees against the City that includes work performed on the unsuccessful section 1983 claim. In this event, the district court would have to ascertain the extent to which Thorne's billing time records must be augmented to permit it to identify distinct claims. See Rivera, 106 S.Ct. at 2692 n. 4
 
 
 [13]
 Moreover, on remand, Thorne's damage award will increase