**Maria ALANIZ, et al., Plaintiff,**

**v.**

**CALIFORNIA PROCESSORS, INC., et al., Defendants.**

**Claim of Connie BARRIOS and Louise Lopez, Claimants-Appellants,**

**v.**

**CONTADINA FOODS, Defendant-Appellee.**

**Nos. 83–2246, 83–2644.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 2, 1984.

Decided April 1, 1986.

---

Alan B. Exelrod, San Francisco, Cal., for claimants-appellants.

Michael P. Riccitiello, Paula Champagne, Littler, Mendelson & Fastiff, San Francisco, Cal., for defendant-appellee.

Before GOODWIN, POOLE and BOOCHEVER, Circuit Judges.

POOLE, Circuit Judge:

Connie Barrios and Louise Lopez filed claims for employment discrimination under a settlement agreement stemming from a class action against 74 food processor and union defendants, including appellee Contadina Foods. The settlement agreement provided for training programs, affirmative action procedures and an Affirmative Action Fund, claims to which would be heard by a magistrate. A magistrate, appointed by the district court as special master, entered final judgment for the defendants. Appeal was taken to this court. We dismissed the appeal and remanded to the district court because it had entered final judgment without making a *de novo* review of the magistrate's findings. After a second appeal, the district court held a hearing, conducted a *de novo* review of the magistrate's findings, and thereafter entered judgment for the defendants, from which Barrios and Lopez now appeal. We affirm.

## I. FACTS AND PROCEEDINGS BELOW

Appellants have been seasonal employees at Contadina Foods' Woodland, California cannery since the 1940's. The majority of jobs available at Contadina were seasonal, but some workers were required for year-round work in appellee's warehouse. Such "regular" employees had seniority status over seasonal employees, even though a seasonal employee's hire date was earlier. Appellants sought to become "regular" employees, but were refused because, until 1971, women were excluded from all off-

season warehouse work. Appellants claimed that denial of off-season unskilled jobs and the opportunity to learn semi-skilled jobs deprived them of the benefits of "regular" employee status.

Appellee's professed reason for excluding women from off-season warehouse work was based on California Industrial Welfare Commission (the Commission) Order 17, which prohibited assignment of female employees to any job that required as part of her regular duties that she lift more than 25 pounds. Appellee claimed, and the magistrate found, that all personnel assigned to its warehouses during the off-season were required to do heavy lifting, thereby preventing employment of women for warehouse work. The magistrate found that the Commission strictly enforced this order, even after a district court had held the order violative of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. See Rosenfeld v. Southern Pacific Co.*, 293 F.Supp. 1219 (C.D.Cal. 1968). The Commission continued to enforce its order until June, 1971 when we affirmed *Rosenfeld* on appeal. *Rosenfeld v. Southern Pacific Co.*, 444 F.2d 1219 (9th Cir.1971).

In October 1971, California Processors, Inc. (CPI), a trade association, issued a bulletin notifying its canning industry members that the Commission had ended enforcement of its weight-lifting restrictions. Contadina thereupon changed its practices and began to assign women to warehouse jobs requiring the lifting of objects over 25 pounds. Appellant Barrios was assigned to one such job in January 1972, thereby enabling her to become a "regular" employee. As a result, Barrios disclaims any sex discrimination after 1972.

Appellant Lopez was also assigned to weight-lifting work in early 1972, but "waived off" the job the same day. She subsequently waived off several other jobs involving heavy lifting, claiming back trou-

ble. Lopez became a "regular" employee in 1977.

Appellants had been included as members in a class action filed in December 1973 pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. The class included past, present, and future applicants for employment at CPI member companies who are Black, Asian-American, Native American, Spanish-surnamed, or women. The class action was settled by a consent decree approved in *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269 (N.D.Cal. 1976), *aff'd sub nom. Alaniz v. Tillie Lewis Foods*, 572 F.2d 657 (9th Cir.), *cert. denied*, 439 U.S. 837, 99 S.Ct. 123, 58 L.Ed.2d 134 (1978).

The *Alaniz* settlement created affirmative action hiring procedures and training programs, revised existing seniority lists, and established a $6 million Affirmative Action Fund in order to compensate employees with back pay and other relief from past discrimination.

Lopez and Barrios filed their back pay claims in October 1980 and January 1981, respectively. The claims were referred by the district court to the magistrate, who consolidated them for discovery and trial.

On January 15, 1982, the magistrate entered findings of fact and conclusions of law, holding that Contadina's good faith reliance on the Commission Order 17 precluded Lopez's recovery for discrimination prior to October 1971, even if she had been available, and that she had not been the subject of any actual discrimination after that time.

The magistrate further held that Contadina was entitled to judgment on Barrios' claim because Contadina was immune from damages through October 8, 1971 by virtue of its good faith reliance on the Commission's order and because Barrios had disclaimed damages subsequent to her achievement of regular seniority status in 1972.[1]

---

**1.** Appellant Barrios makes no claim of back pay for discrimination following her attainment of regular seniority status in 1972, and failed to introduce any evidence that she was subject to discrimination on account of her sex subsequent to October 8, 1972.

Upon remand from a prior appeal, the district court held a hearing, reviewed the magistrate's findings and conclusions *de novo*, and entered judgment for appellee Contadina on November 28, 1983.

On this appeal, Barrios and Lopez contend that (1) Contadina's good faith reliance on the Commission's order does not immunize it from liability against appellants' back pay claims; (2) Contadina's failure to hire women for year-round positions was not in good faith; (3) the balance of hardships favors awarding back pay to appellants; and (4) the district court erred in finding that appellant Lopez did not meet her burden of proving employment discrimination.

## II. DISCUSSION

### A. *Validity of the "Good Faith" Defense*

■ Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, declares unlawful discriminatory employment practices, including "discriminat[ion] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's * * * sex." 42 U.S.C. § 2000e–2(a)(1). In private actions under Title VII, the court may "order such affirmative action as may be appropriate, which may include * * * back pay." 42 U.S.C. § 2000e–5(g).

The award of back pay is neither automatic nor mandatory; rather it is a remedy which courts may invoke. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 415, 95 S.Ct. 2362, 2370, 45 L.Ed.2d 280 (1975). In *Albemarle*, the Supreme Court articulated the standard for denial of back pay claims:

> [G]iven a finding of unlawful discrimination, back pay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination.

422 U.S. at 421, 95 S.Ct. at 2373.

The *Albemarle* court did not, however, find it necessary to decide cases involving discrimination on sexual grounds in reliance on state "female protective" statutes that were inconsistent with Title VII. 422 U.S. at 423 n. 18, 95 S.Ct. at 2374 n. 18.

■ Our review of the district court's conclusions of law proceeds *de novo*, *United States v. McConney*, 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied*, ─ U.S. ──, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984), and we base our review of the court's findings of fact under the clearly erroneous standard, *McConney*, 728 F.2d at 1200.

■ This court considered the validity of good faith reliance on a state protective statute as a defense to back pay claims in *Rosenfeld v. Southern Pacific Company*, 444 F.2d 1219 (9th Cir.1971). There we held that while the state protective statute involved in that case did not provide a Bona Fide Occupational Qualification defense under Title VII, good faith reliance might be relevant to back pay awards. *Id.* at 1227. The district court had awarded no damages in *Rosenfeld;* nevertheless, we observed that "[p]rior to a judicial determination such as evidenced by this opinion, an employer can hardly be faulted for following the explicit provisions of applicable state law." *Id.*

We further considered the issue whether an employer can be held liable for back pay when discrimination results from applicable state law in *Schaeffer v. San Diego Yellow Cabs, Inc.*, 462 F.2d 1002 (9th Cir.1972). In *Schaeffer*, the female plaintiff was prevented by California Commission regulations from driving a cab for nine-hour shifts. We held that Yellow Cab intentionally engaged in unlawful employment discrimination. "The fact that the Company may have been relying on a state statute does not make their [sic] actions any less of a violation under § 706(g) [of Title VII of the Civil Rights Act of 1964]." *Id.* at 1006. Nevertheless, we found that good faith reliance on state law was relevant to liability for back pay. We rejected both the Company's position that good faith reliance on state law should be a complete defense,

and the position of EEOC and of the plaintiff that such reliance should be irrelevant:

> In the case of damages of this nature, a court must balance the various equities between the parties and decide upon a result which is consistent with the purposes of the Equal Employment Opportunities Act, and the fundamental concepts of fairness.
>
> \*    \*    \*    \*    \*    \*
>
> Rather than drawing any hard and fast rule concerning the defense of good faith reliance on a state statute, we believe that in each case the merits of the plaintiff's claim and the public policy behind it must be balanced against the hardship on a good-faith employer.

462 F.2d at 1006–07.

We concluded that by the time Yellow Cab had learned of the district court decision in *Rosenfeld* invalidating the weight-lifting and hour restrictions (entered on November 22, 1968) and the EEOC regulations rejecting this state law as the basis for Bona Fide Occupational Qualification (issued January 22, 1969), its continuing reliance on the state statute to deny the plaintiff the right to work nine-hour days could no longer be considered to be in good faith. Schaeffer was entitled to back pay from the time the company learned of the EEOC's new regulations until the time it began allowing nine-hour daily employment for women. We find the same rationale should be applied here.

### B. *The District Court's Findings of Good Faith on the Part of Contadina*

■ Appellants contend that Contadina did not rely in good faith on the Commission Order. They argue that there was enough work in the Contadina warehouse that required no heavy lifting that Contadina could have found eight hours per day of light work throughout the offseason to which a woman could have been assigned. The district court found that although appellants had successfully demonstrated that it was possible to create such eight-hour workdays, limiting women to non-lifting jobs in an offseason work force which performed a variety of tasks would have impaired the employer's flexibility to structure its work force as it saw fit. The court concluded that Contadina was not required to alter its work force to create opportunities for women, especially in light of the court's finding that Contadina was, until October 8, 1971, unaware of any infirmities in the Commission Order. That finding must stand as it is not clearly erroneous. *See McConney*, 729 F.2d at 1201.

The district court found that Contadina had no notice of either the district court or the appellate court decision in the *Rosenfeld* case until it received the October 8, 1971 bulletin from CPI informing it that the Commission would no longer enforce its weight-lifting restriction. The district court further found that before October 8, 1971, no female employee had ever filed a charge with any administrative agency either challenging Contadina's job assignments or its adherence to the Commission Order, and that Contadina had no notice of any EEOC policy change regarding state protective laws. In accordance with *Schaeffer*, Contadina is entitled to the presumption that it relied in good faith on the Commission regulation until October 8, 1971, when it first became aware of the suspension of the Commission Order. Contadina further demonstrated its good faith by assigning female employees to heavy-lifting jobs at the first opportunity following receipt of the notice of suspension of the Commission Order. Contadina's good faith reliance on the order should therefore immunize it from liability for back pay through October 8, 1971.

### C. *Balancing Hardships as a Basis for Awarding Back Pay*

■ Appellants also contend that despite Contadina's good faith reliance, the balance of hardships under *Schaeffer* requires that they be awarded their back pay claims. They argue that the district court failed to employ the proper standard in balancing the merits of their claims against the hardships which payment would impose on Con-

tadina. Appellants invoke as the proper standard that set forth in *Ostroff v. Employment Exchange, Inc.,* 683 F.2d 302 (9th Cir.1982) (per curiam). In *Ostroff,* we stated that once unlawful discrimination has been proven, the burden is on the defendants to prove by "clear and convincing evidence" that a plaintiff would not have been referred or hired in the absence of discrimination. *Id.* at 304. *Ostroff,* which concerned a job applicant who was rejected by an employer who was unaware of her qualifications, did not address the issue of an employer's good faith reliance on a valid statute as a defense to a claim of back pay. We do not believe that the district court erred in failing to impose the *Ostroff* burden of proof on appellee when it engaged in balancing under *Schaeffer.*

■ The district court weighed the merits of the appellants' claims against the hardship to Contadina and to the other employers bound by the settlement agreement. It found that hardship, in the form of less money to be paid to entitled claimants and less funds available for training programs, would result to Contadina and the other employers if appellants' back pay claims were granted. Those findings by the district court are not clearly erroneous. Hence Lopez and Barrios' claim for back pay will not be allowed because of Contadina's good faith reliance on the Commission Order.

### D. *Louise Lopez' Prima Facie Case of Employment Discrimination*

■ Appellant Lopez bears the initial burden of establishing a prima facie case of employment discrimination. *McDonnell Douglas Corp. v. Greene,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). The district court divided Lopez' claims of discrimination into two periods: the period before October 8, 1971, when Contadina first learned of the suspension of the Commission regulation, and the period after October 8, 1971. The district court found that Lopez had failed to apply for permanent employment until 1974. The failure to submit an application for a job

"does not inevitably and forever foreclose [a person's] entitlement to * * * relief under Title VII * * *." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 367, 97 S.Ct. 1843, 1870-71, 52 L.Ed.2d 396 (1977). However,

> [a] nonapplicant must show that he was a potential victim of unlawful discrimination. Because he is necessarily claiming that he was deterred from applying for the job by the employer's discriminatory practices, his is the not always easy burden of proving that he would have applied for the job had it not been for those practices.

431 U.S. at 367-68, 97 S.Ct. at 1871.

Therefore Lopez must establish that "given a free choice" she would have applied for offseason work. As Lopez' mere filing of a statement of claim in this action does not establish that she would have sought offseason work for which she was qualified but for her knowledge of the company's discriminatory policy, the district court properly found that Lopez had failed to meet her burden of proof.

■ With respect to the time period after October 8, 1971 to 1977, when Lopez finally became a full-time employee, the district court found that she had voluntarily waived off, failed to apply, or otherwise disqualified herself from performing offseason work. Furthermore, the district court found that Lopez failed to introduce any evidence that Contadina intended to discriminate against her on account of her sex with respect to any particular job to which she might have been assigned but for her waiver. Lopez failed to meet her burden of proof as to discrimination, and is therefore precluded from obtaining back pay claims for the period after October 8, 1971.

### III. CONCLUSION

For the reasons stated above, the judgment of the district court is AFFIRMED.