**Manuel T. FRAGANTE,**
**Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF HONOLULU; Eileen Anderson; Peter Leong; Dennis Kamimura; George Kuwahara; Kalani McCandless, Defendants–Appellees.**

No. 87–2921.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 17, 1988.

Decided March 6, 1989.

Amended Oct. 23, 1989.

William D. Hushijo and Mari J. Matsuda, Honolulu, Hawaii for plaintiff/appellant.

Gilbert C. Doles, Deputy Corporate Counsel, City & County of Honolulu, Hawaii, for defendants/appellees.

Susan Buckingham Reilly, Asst. Gen. Counsel, Equal Opportunity Com'n, Washington, D.C., and Jose Roberto Juarez, Jr., Mexican American Legal Defense and Educational Fund, for amici.

Before O'SCANNLAIN and TROTT, Circuit Judges, and KAY*, District Judge.

TROTT, Circuit Judge:

Manuel Fragante applied for a clerk's job with the City and County of Honolulu (Defendants). Although he placed high enough on a civil service eligible list to be chosen for the position, he was not selected because of a perceived deficiency in relevant oral communication skills caused by his "heavy Filipino accent." Fragante brought suit, alleging that the defendants discriminated against him on the basis of his national origin, in violation of Title VII of the Civil Rights Act. At the conclusion of a trial, the district court found that the oral ability to communicate effectively and clearly was a legitimate occupational qualification for the job in question. This finding was based on the court's understanding that an important aspect of defendant's business—for which a clerk would be responsible—involved the providing of services and assistance to the general public. The court also found that defendant's failure to hire Fragante was explained by his deficiencies in the area of oral communication, not because of his national origin. Finding no proof of a discriminatory intent or motive by the defendant, the court dismissed Fragante's complaint, 699 F.Supp. 1429, and he appeals. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I

## FACTS

In April 1981, at the age of sixty, Fragante emigrated from the Philippines to Hawaii. In response to a newspaper ad, he applied in November of 1981 for the job at issue in this appeal—an entry level Civil Service Clerk SR-8 job for the City of Honolulu's Division of Motor Vehicles and Licensing. The SR-8 clerk position involved such tasks as filing, processing mail, cashiering, orally providing routine information to the "sometimes contentious" public over the telephone and at an information counter, and obtaining supplies. Fragante scored the highest of 721 test takers on the written SR-8 Civil Service Examination which tested, among other things, word usage, grammar and spelling. Accordingly, he was ranked first on a certified list of eligibles for two SR-8 clerk positions, an achievement of which he is understandably quite proud.

Fragante then was interviewed in the normal course of the selection process—as were other applicants—by George Kuwahara, the assistant licensing administrator, and Kalani McCandless, the division secretary. Both Kuwahara and McCandless were personally familiar with the demands of the position at issue, and both had extensive experience interviewing applicants to the division. During the interview, Kuwahara stressed that the position involved constant public contact and that the ability to speak clearly was one of the most important skills required for the position.

Both Kuwahara and McCandless had difficulty understanding Fragante due to his pronounced Filipino accent, and they determined on the basis of the oral interview that he would be difficult to understand

* Honorable Alan C. Kay, United States District Judge, District of Hawaii, sitting by designation.

**594**

both at the information counter and over the telephone. Accordingly, both interviewers gave Fragante a negative recommendation. They noted he had a very pronounced accent and was difficult to understand. It was their judgment that this would interfere with his performance of certain aspects of the job. As a consequence, Mr. Fragante dropped from number one to number three on the list of eligibles for the position.

Under the city's civil service rules, the Department of Motor Vehicles and Licensing, as the appointing authority, is allowed discretion in selecting applicants for the clerk vacancies. City Civil Service Rule 4.2(d) allows the defendants to select any of the top five eligibles without regard to their rank order.[1] The essence of this rule was clearly stated in the employment announcement posted for the SR–8 position:

> The names of the "top five" qualified applicants with the highest examination grades will be referred to the employing agency in the order of their examination grade and availability for employment according to Civil Service Rules. The employing agency may select any one of the eligibles referred. Those not selected will remain on the list for at least one year for future referrals.

In accord with this process, the two other applicants who were judged more qualified than Fragante and who therefore placed higher than he on the final list got the two available jobs, and he was so notified by mail.

After exhausting administrative remedies, Fragante filed a claim under Title VII of the Civil Rights Act against the City and County of Honolulu, alleging he was discriminated against because of his accent. The district court relied on the results of the oral interview and found that Fragante's oral skills were "hampered by his accent or manner of speaking." The court found no evidence of unlawful discrimination in violation of Title VII, concluding that Fragante lacked the "bona fide occupational requirement"[2] of being able to communicate effectively with the public, and dismissed his claim.

## II

## DISCUSSION

■ The ultimate question of discrimination is generally considered a finding of fact subject on review to the clearly erroneous standard. *United States Postal Service v. Aiken,* 460 U.S. 711, 715–16, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983); *Alaniz v. California Processors, Inc.,* 785 F.2d 1412, 1416 (9th Cir.1986). However, such findings based on an erroneous application of law are reviewable as questions of law. *Pullman–Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Alaniz,* 785 F.2d at 1416.

■ Title VII prohibits employment discrimination on the basis of race, color, sex, religion and national origin. 42 U.S.C. § 2000e–2(a)(1) (1982). A plaintiff may bring an action against an employer under a disparate treatment and/or disparate impact theory. Fragante's action was brought under the disparate treatment theory.

■ In disparate treatment cases, the employer is normally alleged to have "treat[ed] a person less favorably than others because of the person's race, color, religion, sex, or national origin...." *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). The plaintiff has the initial burden in such a case of proving by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas Corp.*

---

**1.** Obviously the "rule of five" does not confer upon defendant a license to discriminate unlawfully against an applicant. We note that the validity of the "rule of five" per se was not challenged by Fragante and is not an issue on this appeal.

**2.** Although the district judge used the language of 42 U.S.C. § 2000e–2(e)(1), it is clear from the record that he did so only to describe the legitimacy of the defendant's reasons for the adverse action, not to invoke the statute itself.

*v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

 To establish a prima facie case of disparate treatment, the plaintiff must offer evidence that "give[s] rise to an inference of unlawful discrimination." *Yartzoff v. Thomas,* 809 F.2d 1371, 1374 (9th Cir. 1987) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981)). Plaintiffs commonly prove a prima facie case by showing that the four factors set forth in *McDonnell Douglas* are present. To accomplish this, a plaintiff such as Fragante must show: (1) that he has an identifiable national origin; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that he was rejected despite his qualifications; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. *Id.* "Title VII's nature and purpose require that the *McDonnell Douglas* test be flexible." *Spaulding v. University of Washington,* 740 F.2d 686, 700 (9th Cir.), *cert. denied* 469 U.S. 1036, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). The burden of establishing a prima facie case for disparate treatment is not onerous. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093–94. A determination of whether a plaintiff establishes a prima facie case will depend on the facts of each case. *Id.*

 Once the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination by "articulating some legitimate, nondiscriminatory reason" for the adverse action. *Id.* at 254, 101 S.Ct. at 1094. After the employer presents legitimate reasons for plaintiff's non-selection, the burden shifts to the plaintiff, and he must show—if he can—that the employer's purported reason for non-selection was "a pretext for invidious discrimination". *Id.* at 252–53, 101 S.Ct. at 1093. To succeed in carrying the ultimate burden of proving intentional discrimination, a plaintiff may establish a pretext either directly, by showing that the employer was more likely motivated by a discriminatory reason, or indirectly, by showing the employer's proffered reason is unworthy of credence. *Id.* at 256, 101 S.Ct. at 1095.

### A. Prima Facie Case

Defendants first argue Fragante failed to meet his burden of proving a prima facie case because he failed to show he was actually qualified for the SR–8 clerk position, a position which requires the applicant to be able to communicate clearly and effectively. Fragante, on the other hand, contends he was qualified for the position. As proof he points to his exceptional score on the objective written examination, and he argues that his speech, though heavily accented, was deemed comprehensible by two expert witnesses at trial. Fragante's position is supported by the approach taken by the Equal Employment Opportunity Commission which submits that a plaintiff who proves he has been discriminated against solely because of his accent does establish a prima facie case of national origin discrimination. *Bell v. Home Life Insurance Co.,* 596 F.Supp. 1549, 1554–55 (M.D.N.C.1984); *Carino v. University of Oklahoma,* 25 FEP Cases 1332, 1336–37 (W.D.Okla.1981), *aff'd,* 750 F.2d 815 (10th Cir.1984). *See also Berke v. Ohio Dept. of Public Welfare,* 628 F.2d 980, 981 (6th Cir. 1980) (per curiam) (court upheld determination that discrimination on the basis of foreign accent was a sufficient basis for finding national origin discrimination). This contention is further supported by EEOC guidelines which define discrimination to include "the denial of equal employment opportunity ... because an individual has the ... linguistic characteristics of a national origin group." 29 C.F.R. § 1606.1 (1988). Furthermore, Fragante was never advised that he was not qualified for the job: he was only told that he was less-qualified than his competition.

Because we find that Fragante did not carry the ultimate burden of proving national origin discrimination, however, the issue of whether Fragante established a prima facie case of discrimination is not

significant, and we assume without deciding that he did.

## B. The Statute and its Purpose

Preliminarily, we do well to remember that this country was founded and has been built in large measure by people from other lands, many of whom came here—especially after our early beginnings—with a limited knowledge of English. This flow of immigrants has continued and has been encouraged over the years. From its inception, the United States of America has been a dream to many around the world. We hold out promises of freedom, equality, and economic opportunity to many who only know these words as concepts. It would be more than ironic if we followed up our invitation to people such as Manuel Fragante with a closed economic door based on national origin discrimination. It is no surprise that Title VII speaks to this issue and clearly articulates the policy of our nation: unlawful discrimination based on national origin shall not be permitted to exist in the workplace. But, it is also true that there is another important aspect of Title VII: the "preservation of an employer's remaining freedom of choice." *Price Waterhouse v. Ann B. Hopkins,* — U.S. ——, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In that regard, the court said:

> To begin with, the existence of the BFOQ exception shows Congress' unwillingness to require employers to change the very nature of their operations in response to the statute. And our emphasis on "business necessity" in disparate-impact cases, see *Watson* and *Griggs,* and on "legitimate, nondiscriminatory reason[s]" in disparate-treatment cases, see *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), results from our awareness of

Title VII's balance between employee rights and employer prerogatives.

. . . . .

> When an employer ignored the attributes enumerated in the statute, Congress hoped, it naturally would focus on the qualifications of the applicant or employee. The intent to drive employers to focus on qualifications rather than on race, religion, sex, or national origin is the theme of a good deal of the statute's legislative history.

. . . . .

> Indeed, the very purpose of title VII is to promote hiring on the basis of job qualifications, . . . .

*Id.* 109 S.Ct. at 1786–87.

With this guidance in mind, and particularly its focus on employment qualifications, we proceed to the task at hand.

## C. Proof of an Ultimate Case of Discrimination

We turn our discussion to whether defendants articulated a legitimate, nondiscriminatory reason for Fragante's nonselection. We find that they did, but to this finding we add a note of caution to the trial courts. Accent and national origin are obviously inextricably intertwined in many cases. It would therefore be an easy refuge in this context for an employer unlawfully discriminating against someone based on national origin to state falsely that it was not the person's national origin that caused the employment or promotion problem, but the candidate's inability to measure up to the communications skills demanded by the job. We encourage a very searching look by the district courts at such a claim.[3]

■ An adverse employment decision may be predicated upon an individual's accent when—but only when—it interferes materially with job performance. There is nothing improper about an employer mak-

---

**3.** The EEOC cautions that denying employment opportunities because of an individual's foreign accent insofar as it creates an inability to communicate well in English may be a "cover" for unlawful discrimination. Thus, the EEOC appropriately provides that it will "carefully investigate charges involving these selection procedures for both disparate treatment and adverse impact on the basis of national origin." 29 C.F.R. § 1606.6(b)(1). We, likewise, give careful consideration to Fragante's allegation of national origin discrimination.

ing an *honest* assessment of the oral communications skills of a candidate for a job when such skills are reasonably related to job performance. EEOC Compliance Manual (CCH) ¶ 4035 at 3877–78 (1986); *see also Mejia v. New York Sheraton Hotel,* 459 F.Supp. 375, 377 (S.D.N.Y.1978) (Dominican chambermaid properly denied promotion to front desk because of her "inability to articulate clearly or coherently and to make herself adequately understood in ... English"); *Carino v. University of Oklahoma Board of Regents,* 750 F.2d 815, 819 (10th Cir.1984) (plaintiff with a "noticeable" Filipino accent was improperly denied a position as supervisor of a dental laboratory where his accent did not interfere with his ability to perform supervisory tasks); *Berke,* 628 F.2d at 981 (employee with "pronounced" Polish accent whose command of English was "well above that of the average adult American" was improperly denied two positions because of her accent).

■ The defendants advertised for applicants to fill SR–8 vacancies. The initial job announcement listed the ability to "deal tactfully and effectively with the public" as one of the areas to be tested. There is no doubt from the record that the oral ability to communicate effectively in English is reasonably related to the normal operation of the clerk's office. A clerk must be able to respond to the public's questions in a manner which the public can understand. In this regard, the district court in its Findings of Fact and Conclusions of Law and Order made the following significant observations:

> The job is a difficult one because it involves dealing with a great number of disgruntled members of the public. The clerk must deal with 200–300 people a day, many of whom are angry or complaining and who do not want to hear what the clerk may have to explain concerning their applications or an answer to their questions. It is a high turnover position where people leave quickly because of the high stress involving daily contact with contentious people.

(Clerk's Record 30 at 7).

What must next be determined is whether defendants established a factual basis for believing that Fragante would be hampered in performing this requirement. Defendants submit that because his accent made Fragante difficult to understand as determined by the interview, he would be less able to perform the job than other applicants. Fragante, on the other hand, contends he is able to communicate effectively in English as established by two expert witnesses at trial and by his responses in open court. In essence, he argues his non-selection was effectively based upon national origin discrimination.

After the interview, Kuwahara and McCandless scored Fragante on a rating sheet that was used for all applicants. Applicants were scored in the categories of appearance, speech, self-confidence, emotional control, alertness, initiative, personality, attitude, work experience, and overall fitness for the job. A scale of 1–10 was used. Kuwahara gave Fragante a score of 3 for speech, and noted: "very pronounced accent, difficult to understand." Although McCandless did not enter a score in the speech category, she noted: "Heavy Filipino accent. Would be difficult to understand over the telephone."

After the interviews were scored, Kuwahara and McCandless reviewed the scores, discussed the applicants, and decided on their hiring recommendation to finance director Peter Leong. In making the recommendation, written examination scores were given no consideration. Kuwahara prepared the written recommendation to Leong, dated April 13, 1982, recommending two others for selection. Fragante in his position as Number 3 on the final list was described as follows:

> 3. Manuel Fragante—Retired Phillippine (sic) army officer. Speaks with very pronounced accent which is difficult to understand. He has 37 years of experience in management administration and appears more qualified for professional rather than clerical work. However, because of his accent, I would not recommend him for this position.

(P.Ex. A at 9; P.Ex. N).

McCandless then notified Fragante that he was not selected for either of the clerk

position vacancies. Pursuant to a request from Fragante, Kuwahara then reduced the matter to writing. In a letter, dated June 28, 1982, the reasons why he was not selected were articulated as follows:

As to the reason for your non-selection, we felt the two selected applicants were both superior in their verbal communication ability. As we indicated in your interview, our clerks are constantly dealing with the public and the ability to speak clearly is one of the most important skills required for the position. Therefore, while we were impressed with your educational and employment history, we felt the applicants selected would be better able to work in our office because of their communication skills.

(P.Ex. A at 10; P.Ex. Q).

Thus, the interviewers' record discloses Fragante's third place ranking was based on his "pronounced accent which is difficult to understand." Indeed, Fragante can point to no facts which indicate that his ranking was based on factors other than his inability to communicate effectively with the public. This view was shared by the district court.

Although the district court determined that the interview lacked some formality as to standards, instructions, guidelines, or criteria for its conduct and that the rating sheet was inadequate, the court also found that these "insufficiencies" were irrelevant with respect to plaintiff's complaint of unlawful discrimination. A review of the record reveals nothing that would impeach this assessment. Kuwahara and McCandless recorded their evaluation of Fragante's problem in separate written remarks on their rating sheets. As such, a legitimate factual basis for this conclusion that Fragante would be less able than his competition to perform the required duties was established.

Fragante argues the district court erred in considering "listener prejudice" as a legitimate, nondiscriminatory reason for failure to hire. We find, however, that the district court did not determine defendants refused to hire Fragante on the basis that some listeners would "turn off" a Filipino accent. The district court after trial noted that: "Fragante, in fact, has a difficult manner of pronunciation and the Court further finds as a fact from his general testimony that he would often not respond directly to the questions as propounded. He maintains much of his military bearing." We regard the last sentence of the court's comment to be little more than a stray remark of no moment.

We do not find the court's conclusion clearly erroneous. We find support for our view in *Fernandez v. Wynn Oil,* 653 F.2d 1273, 1275 (9th Cir.1981), where this court held inability to communicate effectively to be one valid ground for finding a job applicant not qualified.

Having established that defendants articulated a legitimate reason for Fragante's non-selection, our next inquiry is whether the reason was a mere pretext for discrimination. Fragante essentially argues that defendant's selection and evaluation procedures were so deficient as to render the proffered reason for non-selection nothing more than a pretext for national origin discrimination. The problem with this argument, however, is that on examination it is only a charge without substance. The process may not have been perfect, but it reveals no discriminatory motive or intent. Search as we have, we have not been able to find even a hint of a mixed motive such as existed in *Price Waterhouse.* Instead, it appears that defendants were motivated exclusively by reasonable business necessity.

▉ Fragante's counsel attempts to cast this case as one in which his client was denied a job simply because he had a difficult accent. This materially alters what actually happened. Fragante failed to get the job because two competitors had superior qualifications with respect to a relevant task performed by a government clerk. Insofar as this implicates "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees ...," *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1735, 20 L.Ed.2d 811 (1968), it is not something we are permitted to ignore. Title VII does not stand for the proposition that a person in a protected

class—or a person with a foreign accent—shall enjoy a position of advantage thereby when competing for a job against others not similarly protected. *Cf. Mt. Healthy City Board of Ed. v. Doyle,* 429 U.S. 274, 285, 97 S.Ct. 568, 575, 50 L.Ed.2d 471 (1977). And, the record does not show that the jobs went to persons less qualified than Fragante: to the contrary.

Under our holding in *Ward v. Westland Plastics, Inc.,* 651 F. 1266, 1269 (9th Cir. 1980), "[a]n employer's decision may be justified by the hired employee's superior qualifications unless the purported justification is a pretext for invidious discrimination." *Fernandez,* 653 F.2d at 1276. In this case, there is simply no proof whatsoever of pretext, and we do not find the district court's finding of "no discrimination" to be clearly erroneous.

In sum, the record conclusively shows that Fragante was passed over because of the deleterious *effect* of his Filipino accent on his ability to communicate orally, not merely because he had such an accent.

The district court is

AFFIRMED.