54 F.3d 786
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Mario Reul NAJERA, Plaintiff-Appellant,
v.
STATE OF CALIFORNIA-PRISON INDUSTRY AUTHORITY; David King;
Linda Clifford; Rick Reyes, Defendants-Appellees.
 No. 94-55937.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 16, 1995.*
Decided May 22, 1995.
 
 Before: WALLACE, Chief Judge, HUG and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Mario Reul Najera appeals pro se the district court's summary judgment in favor of his employer, Prison Industry Authority ("PIA"), his PIA supervisor, and various PIA employees in Najera's employment discrimination action brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Sec. 2000e et seq. and under the Americans with Disabilities Act ("ADA"), 42 U.S.C. Sec. 12101 et seq. Najera also contends that the district court erred by not recusing counsel for the defendants. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Background
 
 
 4
 Najera is a United States citizen who immigrated from Mexico. In 1986, Najera was hired by the PIA. Najera worked for the PIA as an "Industrial Supervisor, P.I. (Fabric Products)." In 1988, while working at the PIA facility in Soledad, Najera filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging national origin discrimination in the PIA's promotion process. Najera was issued a right-to-sue letter, but declined to do so. Najera subsequently requested a transfer, due to family hardship, which was granted. Najera was reassigned to the Correctional Rehabilitation Center at Norco ("CRC").
 
 
 5
 In February 1992, Najera took medical disability leave for emotional stress at the direction of his physician. While on disability leave, the PIA closed the enterprise at the CRC where Najera had been working prior to his disability. As a result of the closing, nine positions were eliminated.
 
 
 6
 Pursuant to an agreement between PIA and Najera's union, CRC employees, based on seniority, were given the option of either transferring to another facility or seeking reclassification into another job category. Najera was informed of these options, but failed to respond. As a result, Najera was involuntarily transferred to the correctional facility at Soledad. Najera also was informed that if and when he was able to return to work, he must report to the facility at Soledad.
 
 
 7
 In March 1993, Najera submitted a letter from his doctor stating that he considered Najera to be "permanently disabled from working at his last job with the Department of Corrections" and that "[r]eturning to work in a correctional facility will pose an unacceptable level of danger to self and the department officials." Because of his disability, Najera remained on leave until his disability retirement in May of 1993 and never worked at Soledad.
 
 
 8
 Najera challenged the involuntary transfer. After exhausting his administrative remedies, he filed this action in district court. In his complaint, Najera alleged that the defendants violated Title VII when they involuntarily transferred him based on his national origin and in retaliation for his previous EEOC complaint. Najera also alleged that the defendants violated the ADA by discriminating against him based on his disabilities.
 
 II
 Analysis
 
 9
 We review de novo the district court's grant of summary judgment. Trent v. Valley Electric Ass'n, 41 F.3d 524, 525 (9th Cir. 1994). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court applied the correct substantive law. Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir. 1989).
 
 A. Retaliation Claim
 
 10
 To succeed on a Title VII retaliation claim, plaintiff must demonstrate that (1) he engaged in a protected activity, (2) was thereafter subjected by his employer to adverse employment action, and (3) a causal link exists between the activity and the adverse employment action. Trent, 41 F.3d at 526. If the plaintiff makes a prima facie case, the burden shifts to the employer to articulate some legitimate, nonretaliatory reason for the adverse action. See Wrighten v. Metropolitan Hosp., Inc., 726 F.2d 1346, 1354 (9th Cir. 1984). If the employer makes such a showing, the burden shifts back to the employee to show that the explanation is a pretext or that the discriminatory reason more likely motivated the employer's action. Id.[1]
 
 
 11
 Here, even assuming that Najera's involuntary transfer is an adverse employment action, Najera has failed to raise any genuine issue of material fact of a causal link between his filing of the EEOC complaint and the adverse action. See Trent, 41 F.3d at 526. Moreover, the closing of the CRC facility due to a slow down in demand for the PIA's products provides a legitimate, nonretaliatory reason for the transfer, which Najera failed to rebut. See Wrighten, 726 F.2d at 1354; Jordan v. Clark, 847 F.2d 1368, 1376 (9th Cir. 1988).
 
 B. National Origin Claim
 
 12
 To establish a prima facie case of discrimination, the plaintiff has the burden of providing evidence "which gives rise to an inference of unlawful discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). "Once the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination by 'articulating some legitimate, nondiscriminatory reason' for the adverse action." Fragante v. City & County of Honolulu, 888 F.2d 591, 595 (9th Cir. 1989) (quoting Burdine, 450 U.S. at 254), cert. denied, 494 U.S. 1081 (1990).
 
 
 13
 Here, Najera alleged that he had been transferred because of national origin. Even if we were to find that Najera stated a prima facie case, the PIA met its burden of articulating a legitimate, nondiscriminatory reason for transferring Najera, which Najera failed to rebut. See Fragante, 888 F.2d at 595; Burdine, 450 U.S. at 254 (once employer meets its burden, employee must demonstrate that the employer's explanation was a mere pretext for discrimination); see also Forsberg v. Pacific Northwest Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988) ("purely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment").[2]
 
 C. ADA Claim
 
 14
 The ADA prohibits employers from discriminating against a qualified employee because of a disability. See 42 U.S.C. Sec. 12112(a). As a defense to a claim under the ADA, an employer may show that the individual poses "a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. Sec. 12113(b).
 
 
 15
 Here, even if Najera had been subject to a discriminatory action, as defined by 42 U.S.C. Sec. 12112(b), Najera failed to raise a genuine issue of material fact regarding whether the action was taken because of his disability. Moreover, the letter from Najera's doctor indicates that Najera was not qualified to return because he posed a danger to PIA employees. See 42 U.S.C. Sec. 12113(b).[3]
 
 D. Recusal of Defense Counsel
 
 16
 Najera also contends that the district court erred by not recusing the defendants' counsel, Patricia Barrett. Najera had consulted with her in 1989 about possibly bringing a Title VII action against the PIA. The relevant incidents which lead to the bringing of this current action, however, occurred after this consultation. Accordingly, no confidential information regarding the current action was obtained by Barrett, nor did the district court abuse its discretion by finding that no substantial relationship existed as a result of the consultation. See Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980); see also H.F. Ahmanson & Co. v. Salomon Bros., Inc., 229 Cal. App. 3d 1445, 1452 (Cal. Ct. App. 1991); People v. Thoi, 213 Cal. App. 3d 689, 700 (Cal. Ct. App. 1989). Moreover, Najera's former counsel submitted a declaration stating that his firm had contacted Barrett when he learned of Najera's prior consultation with Barrett and that he had (1) determined that her representation did not create a conflict, (2) discussed the matter with Najera who agreed that there was no conflict, and (3) informed Barrett of this conclusion. Given these circumstances, the district court did not err by denying Najera's request to recuse Barrett. See Trone, 621 F.2d at 998-99 (former client may expressly or impliedly consent to adverse representation); Trust Corp. of America v. Piper Aircraft Corp., 701 F.2d 85, 87-88 (9th Cir. 1983) (same).
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 As an initial matter, we note that the district court properly granted summary judgment to the individual employees of the PIA. See Miller v. Maxwell's Intern, Inc., 991 F.2d 583, 587-88 (9th Cir. 1993), cert. denied, 114 S. Ct. 1049 (1994) (Title VII claim may be brought only against employer, not against individual employees)
 
 
 [2]
 In his reply brief, Najera alleges that another CRC employee with a lower seniority score was transferred to a closer location to the CRC. This employee, however, voluntarily reclassified in order to obtain the position. Najera also could have sought reclassification but apparently failed to respond. Accordingly, the incident lends no support to his claim of discriminatory or retaliatory treatment
 
 
 [3]
 Najera also claims that the PIA cut his medical benefits while he was on medical leave. Uncontroverted evidence, however, shows that Najera was never denied benefits and that any confusion as to payment for those benefits was attributable to him