54 F.3d 786
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Mario Reul NAJERA, Plaintiff-Appellant,
v.
STATE OF CALIFORNIA, DEPT. OF CORRECTIONS; Tomasa Schultz;
David King; et al., Defendants-Appellees.
 No. 94-55941.
 United States Court of Appeals, Ninth Circuit.
 Submitted May 16, 1995.*
Decided May 22, 1995.
 
 Before: WALLACE, Chief Judge, HUG and NOONAN, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Mario Reul Najera appeals pro se the district court's summary judgment in favor of his employer, Prison Industry Authority ("PIA"), his PIA supervisor, and various PIA employees in Najera's employment discrimination action brought under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. Sec. 2000e et seq., and under the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Sec. 12490 et seq. Najera also contends that the district court erred by not recusing counsel for the defendants. We have jurisdiction under 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Background
 
 
 4
 Najera is a United States citizen who emigrated from Mexico. In 1986, Najero was hired by the PIA. Najera worked for the PIA as an "Industrial Supervisor, P.I. (Fabric Products)." In 1988, while working at the PIA facility in Soledad, California, Najera filed an Equal Employment Opportunity Commission ("EEOC") complaint alleging national origin discrimination in the PIA's promotion process. Najera was issued a right-to-sue letter, but declined to do so. Najera subsequently requested a transfer, due to family hardship, which was granted. Najera was reassigned to the Correctional Rehabilitation Center at Norco ("CRC").
 
 
 5
 While at the CRC, Najera alleges he was subjected to a hostile work environment because of his Mexican origin and in retaliation for his earlier EEOC complaint. Specifically, Najera alleges that his supervisor, Tomasa Schultz, who also is Hispanic and of Mexican origin, on one occasion wanted Najera to lift a large basket of cloth which he considered to be too heavy and ridiculed him when he refused. On other occasions, Najera contends that Schultz showed him "disrespect" in front of the inmates and on two occasions called him "honey" and was unfairly critical of the quality of the work produced under his supervision.
 
 
 6
 On January 24, 1992, Schultz gave Najera a memorandum about his poor quality control. The memorandum, however, was informal and was never placed in his personnel file.
 
 
 7
 On February 4, 1992, Najera took medical disability leave from his job at the Norco facility for emotional stress at the direction of his physician. On February 7, 1992, Najera filed another EEOC complaint alleging that the defendants, including Schultz and her supervisors, created a hostile work environment for Najera because of his national origin and in retaliation for his previous EEOC complaint.
 
 
 8
 At his deposition, when Najera was asked if Schultz treated him differently because he was from Mexico, he stated, "[s]he only did it because ..., as I mentioned before, she called me a troublemaker and because maybe I didn't want to participate to play with her, and she wanted to get rid of me, that's it." Moreover, when asked why he thought the harassment was because he was from Mexico, Najera stated, "[i]t's not the point that I'm from Mexico," but rather he said because he was a "whistle blower." When counsel for the defendants observed that Najera's attorney would probably not be happy to hear Najera testify that the harassment had nothing to do with his being from Mexico, Najera's counsel called for a recess. After the recess, Najera stated that "I want to make an apology to all of you. I believe because I'm a Mexican guy I was [sic] through all these things that's happened to me."
 
 II
 Analysis
 
 9
 We review de novo the district court's grant of summary judgment. Trent v. Valley Electric Ass'n, 41 F.3d 524, 525 (9th Cir. 1994). Viewing the evidence in the light most favorable to the nonmoving party, we must determine whether there are any genuine issues of material fact and whether the district court applied the correct substantive law. Tzung v. State Farm Fire & Cas. Co., 873 F.2d 1338, 1339-40 (9th Cir. 1989).
 
 A. National Origin Claim[1]
 
 10
 Title VII requires an employer to maintain a workplace atmosphere free of national origin harassment. The EEOC defines such harassment as ethnic slurs or other verbal and physical abuse relating to an employee's national origin when such conduct has the purpose or the effect of (1) creating an intimidating, hostile, or offensive work environment, (2) unreasonably interfering with the employee's work performance, or (3) otherwise adversely affecting an employee's employment opportunities. See 29 C.F.R. Sec. 1606.8(b).
 
 
 11
 To establish a prima facie case of discrimination under Title VII, the plaintiff has the burden of providing evidence "which gives rise to an inference of unlawful discrimination." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). "[P]urely conclusory allegations of alleged discrimination, with no concrete, relevant particulars, will not bar summary judgment." Forsberg v. Pacific Northwest Bell Tel. Co., 840 F.2d 1409, 1419 (9th Cir. 1988).[2]
 
 
 12
 As an initial matter, we observe that the district court properly granted summary judgment to the individual employees of the PIA. See Miller v. Maxwell's Intern, Inc., 991 F.2d 583, 587-88 (9th Cir. 1993), cert. denied, 114 S. Ct. 1049 (1994) (Title VII claim may be brought only against employer, not against individual employees).
 
 
 13
 Turning to the merits of Najera's discrimination claim, Najera alleged that he had been subject to employment discrimination because of his national origin. Najera, however, failed to present any evidence that the PIA or its employees took any actions against him based on his Mexican origin. Indeed, his own deposition refutes this allegation. Accordingly, the district court properly found that Najera had failed to present a prima facie case of discrimination based on national origin. See Burdine, 450 U.S. at 254; see also Forsberg, 840 F.2d at 1419.
 
 B. Retaliation Claim
 
 14
 To succeed on a Title VII retaliation claim, plaintiff must demonstrate that (1) he engaged in a protected activity, (2) was thereafter subjected by his employer to adverse employment action, and (3) a causal link exists between the activity and the adverse employment action. Trent, 41 F.3d at 526.[3]
 
 
 15
 Here, Najera's filing of an EEOC complaint is a protected activity. Najera, however, failed to show that he was the subject of any adverse personnel actions as a result of his EEOC claim. Moreover, even if we were to assume that the incidents he cites do consititute adverse actions, Najera has failed to raise any genuine issue of material fact of a causal link between his filing of his EEOC complaint in 1988 and the adverse actions in 1991 and 1992. See Trent, 41 F.3d at 526; Wrighten v. Metropolitan Hosp., Inc., 726 F.2d 1346, 1354 (9th Cir. 1984).
 
 C. Recusal of Defense Counsel
 
 16
 Najera also contends that the district court erred by not recusing the defendants' counsel, Patricia Barrett. Najera had consulted with her in 1989 about possibly bringing a Title VII action against the PIA. The relevant incidents which led to the bringing of this current action, however, occurred after this consultation, when Najera was transferred to the CRC facility. Accordingly, no confidential information regarding the current action was obtained by Barrett, nor did the district court abuse its discretion by finding that no substantial relationship existed as a result of the consultation. See Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980); see also H.F. Ahmanson & Co. v. Salomon Bros., Inc., 229 Cal. App. 3d 1445, 1452 (Cal. Ct. App. 1991); People v. Thoi, 213 Cal. App. 3d 689, 700 (Cal. Ct. App. 1989). Moreover, Najera's former counsel submitted a declaration stating that his firm had contacted Barrett when he learned of Najera's prior consultation with Barrett and that he had (1) determined that her representation did not create a conflict, (2) discussed the matter with Najera who agreed that there was no conflict, and (3) informed Barrett of this conclusion. Given these circumstances, the district court did not err by denying Najera's request to recuse Barrett. See Trone, 621 F.2d at 998-99 (former client may expressly or impliedly consent to adverse representation); Trust Corp. v. America v. Piper Aircraft Corp., 701 F.2d 85, 87-88 (9th Cir. 1983) (same).
 
 
 17
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed. R. App. P. 34(a); 9th Cir. R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 Federal precedent pertaining to Title VII also applies to analogous claims under FEHA. See Cook v. Lindsay Olive Growers, 911 F.2d 233, 241 (9th Cir. 1990). Accordingly, Najera's FEHA claim stands or falls on the analysis of his Title VII claim
 
 
 [2]
 "Once the plaintiff succeeds in establishing a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination by 'articulating some legitimate, nondiscriminatory reason' for the adverse action." Fragante v. City & County of Honolulu, 888 F.2d 591, 595 (9th Cir. 1989) (quoting Burdine, 450 U.S. at 254), cert. denied, 494 U.S. 1081 (1990). If the employer makes such a showing, the burden shifts back to the employee to show that the explanation is merely a pretext for discrimination. Burdine, 450 U.S. at 252-53
 
 
 [3]
 If the plaintiff makes a prima facie case, the burden shifts to the employer to articulate some legitimate, nonretaliatory reason for the adverse action. See Wrighten v. Metropolitan Hosp., Inc., 726 F.2d 1346, 1354 (9th Cir. 1984). If the employer makes such a showing, the burden shifts back to the employee to show that the explanation is a pretext or that the discriminatory reason more likely motivated the employer's action. Id